UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMPSON FRANCISCO HERNANDEZ, | 1:09-cv-01416-LJO-DLB (HC) |
|           Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|    v. | |
| KEN CLARK, Warden | [Doc. 1] |
|           Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

BACKGROUND

Petitioner is currently incarcerated in the California Department of Corrections and Rehabilitation ("CDCR") following his conviction for kidnaping and robbery. Petitioner was sentenced to life with the possibility of parole. Petitioner does not challenge the validity of his judgment; rather, he challenges the Board of Parole Hearings' (hereinafter "Board") 2008 decision finding him unsuitable for parole. Petitioner contends the Board's decision resulted in a violation of his Due Process rights.

In 2008, Petitioner filed a state petition for writ of habeas corpus in the San Diego County Superior Court, challenging the Board's 2008 decision. (Exhibits A & B, to Answer.) The petition was denied in a reasoned decision on November 6, 2008. (Exhibit B, to Answer.)

On December 22, 2008, Petitioner filed a state petition for writ of habeas corpus in the California Court of Appeal, Fourth Appellate District. (Exhibit C, to Answer.) The petition was denied in a reasoned decision on March 27, 2009. (Exhibit D, to Answer.)

On April 15, 2009, Petitioner filed a state petition in the California Supreme Court. (Exhibit E, to Answer.) The petition was summarily denied on June 10, 2009. (Exhibit F, to Answer.)

Petitioner filed the instant federal petition for writ of habeas corpus on August 13, 2009. (Court Doc. 1.) Respondent filed an answer to the petition on October 26, 2009. (Court Doc. 10.) Petitioner filed a traverse on November 19, 2009. (Court Doc. 11.)

STATEMENT OF FACTS[1]

On December 26, 1998, Petitioner along with three accomplices, engaged in a 24-hour carjacking/kidnapping crime spree. The first victim was stabbed during the commission of a carjacking. The second victim was fishing at a pier with his mother and when he rode his bicycle to obtain the car for his mother, he was interrupted by Petitioner and his accomplices. The victim was forced to the car and told to drive to his home where they robbed him of several personal items, including a TV, VCR, CD players, stereo, jewelry, etc. They forced the boy back into the car and drove him to an unknown location and then dropped him in a ditch so no one could find him. Petitioner then stabbed the victim twice in the leg, then stomped on him and threw him into the ditch. The third victim observed the kidnaping of the second victim and was robbed of his wallet, jacked, and a pager. There was also a third carjacking.

DISCUSSION

I.  Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

---

[1] This Statement of Facts is derived from the Transcript of the Board's 2008 decision.

Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), citing White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71;Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied, 537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

In this instance, the last reasoned decision of the state court was that of the California Court of Appeal, Fourth Appellate District. Exhibit D, to Answer. The Court of Appeal found that some evidence supported the denial of parole because, in addition to the circumstances of

1 the commitment offense, Petitioner continued to minimize his involvement in the crime, failed
2 to gain insight into his conduct, and had a history of recent discipline in prison.  (Id.)

3 II.	Review of Petition

4 	A parole release determination is not subject to all the due process protections of an
5 adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987);
6 see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for
7 procedural protections that particular situations demand). "[S]ince the setting of a minimum term
8 is not part of a criminal prosecution, the full panoply of rights due a defendant in such a
9 proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro,
10 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a
11 state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate
12 must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be
13 afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied
14 parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the
15 decision of the Board must be supported by "some evidence" having an indicia of reliability.
16 Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d
17 703, 705 (9th Cir.1987).

18 	"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not
19 comport with 'the minimum requirements of procedural due process,' unless the findings of the
20 prison disciplinary board are supported by some evidence in the record.'  472 U.S. 445, 454
21 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128.  In
22 determining whether the "some evidence" standard is met, the Court need not examine the entire
23 record, independently assess the credibility of witnesses, or re-weigh the evidence.  Id.  Rather,
24 the Court must determine whether there is any evidence in the record that could support the
25 conclusion of the disciplinary board.  Id., *citing* Superintendent v. Hill, at 455-56.  Although Hill
26 involved the accumulation of good time credits, the same standard applies to parole, as both
27 situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of
28 Parole, 833 F.2d at 1390.

5

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Answer, Exhibit A, to Answer.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008). The applicable standard "is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

1  Id. at 1214.[2]

2      At Petitioner's 2008 hearing, the Board found him unsuitable based primarily on the
3  following factors: (1) the circumstances of the commitment offense; (2) institutional behavior; and
4  (3) lack of insight into the commitment offense and insufficient self-help programming.

5      With regard to the commitment offense, the Board found it clearly demonstrated an
6  exceptionally callous disregard for human suffering. (Exhibit A, Transcript, at 110.) First, there
7  were multiple victims involved in Petitioner's crime spree. The first victim was attacked. The
8  second victim, a 16 year old boy, suffered the most severe injuries. He was kidnaped from the
9  location where he was fishing with his mother and was forced to drive to his home. Upon arrival,
10 Petitioner and his accomplices stole several items of personal property from the household. The
11 victim was then beaten, stabbed, and thrown in a ditch. Petitioner himself admitted to hitting,
12 kicking, and stabbing this victim. Indeed, the Board was troubled by Petitioner's claim that he
13 only "poked" the victim and the worst thing he did was his failure to stop the crime. (Id. at 34,
14 64.) The victim reported that he feigned death so that the suspects would flee and Petitioner did
15 not know whether the victim was dead when they fled. (Id. at 87, 112.) The victim was further
16 mutilated when some of the tips of his fingers were cut off. A third victim, who observed the
17 second kidnaping and carjacking, was robbed of his personal belongings. Petitioner admitted that
18 at the time of the commitment offense he was under the influence of marijuana and alcohol which
19 impaired his judgment. (Id. at 45.) Given the gravity of the circumstances surrounding
20 Petitioner's commitment offense, some evidence supports the Board's finding that it demonstrated
21 an exceptionally callous disregard for human suffering, and Petitioner therefore continues to
22 remain a risk to public safety if released.

23     The Board also considered Petitioner's institutional behavior which included two rules
24 violations in 2002 for failure to report and possession of pruno. Petitioner admitted he drank

---

[2] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (citing Lawrence, 44 Cal.4th at 1213-1214.)

pruno during his entire incarceration. (Id. at 120.) Petitioner also received a counseling chrono in 2004 for delaying lockup. (Id. at 52.) Petitioner's institutional behavior is clearly relevant to the determination of whether he continues to remain a threat to public safety if released, given that he was under the influence of alcohol and marijuana at the time of the commitment offense and has continued during his incarceration. (Id. at 43, 46.) Therefore, Petitioner's institutional misconduct supports the Board's finding that further observation is necessary before it can be said that he no longer remains a threat to public safety if released.

The Board was troubled by Petitioner's attempts to minimize his involvement and severity of the commitment offenses. The Board found he lacked sufficient insight and had not participated in sufficient self-help programming. The Board pointed out Dr. Wilkerson's report which stated:

> However, it is concerning that he maintains that the worst thing he did was not stopping the crime. Even though he should have stopped the crime, he also threatened the victim, assaulted him with a knife, stole from his family, and left him in a ditch after stomping him and beating him.

(Id. at 117.) The psychologist also opined that Petitioner "should explore the circumstances of his crime in greater detail" and "has not thoroughly explored the factors that could increase his risk of having difficulties in the future." (Id. at 65.) When asked to elaborate on the reasons behind the commitment offense, Petitioner responded it was because he was a "wanna-be" gang member. (Id. at 111.) Petitioner also faulted the fact that his father was a "cholo" and his cousins were gang members. (Id. at 49.) It was apparent that Petitioner was attempting to blame his father for his own actions over which he had absolute control. Yet, Petitioner was unable to explain why he allowed himself to be involved in the commitment offense. (Id. at 107-108.) The Board considered the positive aspects of Petitioner's programing which included obtaining his AA degree, printing vocation, and completion of three book reports. (Id. at 114.) However, the Board concluded that Petitioner needed to continue his programming "in order to face, discuss, and understand and cope and learn the causative factors that led you to get involved with this crime spree, and until such time as progress is made, you continue to be unpredictable and a threat to others." (Id. at 119-120.) This factor was properly considered by the Board and some

1  evidence supports the finding that Petitioner lacks the necessary insight and has failed to
2  participate in sufficient self-help programming.  See Lawrence, 44 Cal.4th at 1191, 1220, n.19,
3  1221.
4        In sum, there is some evidence to support the Board's findings that Petitioner's
5  commitment offense, institutional misconduct, lack of necessary insight into the commitment
6  offense, and lack of sufficient self-help programming, demonstrate that he is currently a threat to
7  public safety.  Accordingly, the state appellate court's decision is not contrary to or an
8  unreasonable application of clearly established Supreme Court authority, nor is it an unreasonable
9  determination of the facts in light of the evidence.  28 U.S.C. § 2254(d)(1), (2).

RECOMMENDATION

Based on the foregoing, it is HEREBY ORDERED that:

1.     The instant petition for writ of habeas corpus be DENIED; and,
2.     The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 10, 2009**           **/s/ Dennis L. Beck**
                                                UNITED STATES MAGISTRATE JUDGE